713 S.E.2d 351

**The STATE of South Carolina, Respondent,**

v.

**Mario Ramos HINOJOS, as Defendant and Richard G. Thompson, d/b/a All–Out–Bail Bonding, as Surety, Accredited Property & Casualty Ins., as Surety,**

**of whom Richard G. Thompson, d/b/a All–Out–Bail Bonding, as Surety, Accredited Property & Casualty Ins., as Surety, are Appellants.**

No. 4850.

Court of Appeals of South Carolina.

Heard Feb. 8, 2011.

Decided July 6, 2011.

518

Robert T. Williams, Sr., of Lexington, for Appellants.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, and Assistant Attorney General S. Creighton Waters, of Columbia, for Respondent.

LOCKEMY, J.

Richard G. Thompson, d/b/a All–Out Bail Bonding (All Out), and Accredited Property and Casualty Insurance (collectively, the Appellants) appeal the trial court's estreatment of Mario Hinojos's bond. The Appellants contend the trial court abused its discretion by modifying Hinojos's bond without proper notice and consent. The Appellants also argue their obligations under the bond were completed at the time of Hinojos's guilty plea. We affirm in part, reverse in part, and remand.

## FACTS

On August 18, 2005, Hinojos was arrested in Greenville County and Charged with trafficking methamphetamine and cocaine, conspiracy to traffic methamphetamine and marijuana, and possession of a firearm during the commission of a violent crime. On August 22, 2005, the trial court set a $200,000 surety bond that included conditions that Hinojos be placed on electronic monitoring, maintain contact with the State Grand Jury Clerk, report weekly to South Carolina Law Enforcement Division (SLED) Special Agent Max Dorsey, and not leave the state. Hinojos procured three bonding companies to secure his release: the Appellants; Tracy Bowen, d/b/a Bonds by Gaynell; and Leon Stowers, d/b/a Giggie's Bonding Company. Each bonding company was responsible for one-third of the total bond, or $66,666.66.

At a March 15, 2007 hearing, the trial court granted Hinojos's motion to have the electronic monitoring condition of his bond removed. Written notice of the hearing was not provided to the three bondsmen, and none were present at the hearing. On November 20, 2007, Hinojos entered guilty pleas to each of the five charges against him. Hinojos's sentencing was deferred until his testimony in the trial of a co-conspirator the week of December 10, 2007.[1] Hinojos requested the trial court allow him to remain out of jail on bond pending his cooperation in his co-conspirator's trial. The State did not oppose Hinojos's request, provided the bonding companies agreed to remain on the bond. Mike Curlee, representing All Out, was the only bondsman present at the guilty plea and consented to remain on the bond until Hinojos's sentencing.

On December 10, 2007, Hinojos failed to appear in court for sentencing as ordered. All three bondsmen were present when the trial court verbally issued a bench warrant for Hinojos's arrest. Subsequently, on January 17, 2008, the State filed a Petition for Estreatment of Bond against all three bonding companies. Estreatment hearings were held in March and November 2008. At the November 7, 2008 hear-

---

1. The trafficking methamphetamine and cocaine charges to which Hinojos pled guilty carried mandatory minimum sentences of seven years' incarceration. At the guilty plea, the State recommended a cap of ten years' concurrent incarceration on all charges.

ing, the State conceded a modification was made to Hinojos's bond on March 15, 2007, without the notice or consent of the three bondsmen. The State also withdrew its Petition for Estreatment of Bond against all of the bondsmen except the Appellants because Curlee was present at the guilty plea and consented to remain on the bond.

On April 15, 2009, the trial court estreated $66,666.66 of Hinojos's $200,000 bond to the State. In its order, the trial court noted the Appellants were given "notice and hearing" of Hinojos's guilty plea as required by section 17–15–50 of the South Carolina Code (2003) and Curlee appeared and orally agreed to the conditions of the bond. The trial court determined that while bond modifications must comply with the Statute of Frauds, equitable estoppel may be invoked to bar the Statute of Frauds. The trial court noted that "estoppel applies if a person, by his action, conduct, words, or silence which amounts to a representation, or a concealment of material facts causes another to alter his position to his prejudice of injury." The trial court held that the State "suffered a definite, substantial, detrimental change of position in reliance on the proposed agreement" after Curlee agreed to remain on the bond and Hinojos did not appear for sentencing. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, this court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.* "On review, this [c]ourt is limited to determining whether the [trial] court abused its discretion." *State v. Simmons*, 384 S.C. 145, 158, 682 S.E.2d 19, 26 (Ct.App.2009).

## LAW/ANALYSIS

### I. March 15, 2007 Bond Modification

The Appellants argue the trial court erred in estreating Hinojos's bond where there was a modification of the bond without the proper notice and consent of the Appellants. We disagree.

The Appellants argue they were not given proper notice of the removal of Hinojos's electronic monitoring device. They maintain they were not notified of the March 15, 2007 hearing and did not consent to the bond modification. The Appellants also assert Hinojos's bond was originally in writing and was not modified in writing as required by the Statute of Frauds. The Appellants rely on *State v. McIntyre*, 307 S.C. 363, 365, 415 S.E.2d 399, 400 (1992), where our supreme court determined the bond modification at issue violated the Statute of Frauds and section 17–15–50 because it was not in writing and the surety was not properly notified.

The State concedes the Appellants were not properly notified of the March 15, 2007 hearing; however, the State maintains the Appellants erroneously argue the March 15, 2007 bond modification is the bond modification at issue. The State asserts it complied with the notice and hearing requirements of section 17–15–50 and properly notified the Appellants of Hinojos's November 20, 2007 guilty plea. The State maintains the Appellants were represented at Hinojos's plea and consented to remain on the bond.

We agree with the State that the March 15, 2007 bond modification is not the modification at issue in this case. While the Appellants were not properly notified of the March 15, 2007 hearing, Hinojos still appeared before the trial court in November 2007 and entered a guilty plea. Curlee also appeared at the guilty plea and agreed to remain on the bond after the trial court stated the conditions of the bond, which did not include electronic monitoring. We find this case is distinguishable from *McIntyre*. In *McIntyre*, the surety did not agree to remain on the bond after a modification. 307 S.C. at 365, 415 S.E.2d at 400. Here, although Curlee was not notified of the March bond modification, he agreed at the November hearing to remain on the bond after the modification. Therefore, the issue before us is whether estreatment was proper after Curlee, on behalf of the Appellants, consented to the bond modification and agreed to remain on the bond after Hinojos's November 2007 guilty plea.

## II. Equitable Estoppel

■ The Appellants argue the trial court erred in estreating Hinojos's bond where their obligations were completed at the time of Hinojos's plea. We disagree.

 "The State's right to bond estreatment arises from contract." *McIntyre,* 307 S.C. at 364, 415 S.E.2d at 400. Pursuant to the South Carolina Statute of Frauds, a promise to answer for the debt of another must be in writing and signed by the party to be charged. S.C.Code Ann. § 32–3–10(2) (2007). "The general rule is that the court cannot redraft a bond so as to impose conditions or obligations not contemplated by the parties." *State v. White,* 284 S.C. 69, 71, 325 S.E.2d 64, 65 (1985). Pursuant to section 17–15–50, "the court may, at any time after notice and hearing, amend the order to impose additional or different conditions of release." S.C.Code Ann. § 17–15–50 (2003).

 The doctrine of estoppel may be invoked to prevent a party from asserting the Statute of Frauds. *Atlantic Wholesale Co. v. Solondz,* 283 S.C. 36, 41, 320 S.E.2d 720, 723 (Ct.App.1984). Estoppel "applies if a person, by his actions, conduct, words or silence which amounts to a representation, or a concealment of material facts, causes another to alter his position to his prejudice or injury." *Rushing v. McKinney,* 370 S.C. 280, 293, 633 S.E.2d 917, 924 (Ct.App.2006). "In order to overcome statutory requirements that an agreement be in writing, the party asserting estoppel must show that he suffered a definite, substantial, detrimental change of position in reliance on such agreement and that no remedy except enforcement of the bargain is adequate to restore his former position." *Player v. Chandler,* 299 S.C. 101, 106, 382 S.E.2d 891, 894 (1989).

The Appellants maintain their obligations under Hinojos's bond were completed after his guilty plea, and the subsequent agreement by Curlee to remain on the bond was not enforceable because it was not in writing and did not satisfy the Statute of Frauds. The Appellants argue that without an agreement by all three bondsmen, the trial court created and imposed new obligations outside the original bond. The State argues the Appellants' obligations were not completed at the time of Hinojos's plea, but continued until Hinojos's sentencing. The State maintains the trial court properly determined the Statute of Frauds was barred by equitable estoppel, and that but for Curlee's agreement to remain on the bond, the State would have opposed Hinojos's release.

We agree with the State and find the trial court did not err in determining the doctrine of equitable estoppel barred the Statute of Frauds. At the guilty plea, the State informed the trial court that it did not oppose Hinojos's request to remain out on bond until his sentencing, provided the bondsman agreed to continue on the bond. The trial court advised Hinojos of the conditions of his bond, including that he stay in contact with his attorney, the clerk of court, and SLED. Hinojos's attorney informed the court that Curlee was present and agreed to remain on the bond. Subsequently, the trial court again stated the conditions of Hinojos's bond, which did not include electronic monitoring, and Curlee agreed to remain on the bond, stating he could only answer for All Out and not the other bondsmen. The State informed the court that if Hinojos did not show up for sentencing it would move to estreat his bond.

While Curlee's agreement to remain on Hinojos's bond was not in writing, we find the Appellants are still liable on the bond pursuant to the doctrine of equitable estoppel. Curlee orally agreed to continue on the bond, and the State relied upon this agreement to its detriment. But for Curlee's representation to the trial court, the State would not have consented to Hinojos's release and he would have been taken into custody. Because the State relied upon Curlee's agreement, the Appellants are equitably estopped from denying liability on the bond.

### III. Abuse of Discretion

The Appellants argue the trial court abused its discretion in estreating $66,666.66 of Hinojos's $200,000 bond. We agree.

Section 38–53–70 of the South Carolina Code (2010) provides, "[i]n making a determination as to remission of the judgment, the court shall consider the costs to the State or any county or municipality resulting from the necessity to continue or terminate the defendant's trial and the efforts of law enforcement officers or agencies to locate the defendant." S.C.Code Ann. § 38–53–70 (2010). Furthermore, in *Ex parte Polk*, 354 S.C. 8, 13, 579 S.E.2d 329, 331 (Ct.App.2003), this court determined:

[w]hile the decision regarding remission is within the discretion of the trial court, the court should consider, at a minimum, the costs to the State as well as the purpose of the bond and the nature and willfulness of the default in determining whether, and to what extent, a bond forfeiture should be remitted.

The Appellants argue the trial court failed to consider the three factors established in *Polk*. The State maintains the trial court did not abuse its discretion and argues the trial court held two rule to show cause hearings, reviewed the transcripts, and requested briefs from both parties. The State also maintains the Appellants failed to show the trial court did not consider the *Polk* factors.

We agree with the Appellants. As noted by this court in *Polk*, section 38–53–70 "unambiguously provides that the trial court must consider the costs to the State in determining remission of the judgment on a forfeited bond." 354 S.C. at 12, 579 S.E.2d at 331. The trial court should also examine, at the least, the purpose of the bond and the nature and willfulness of the default. *Id.* at 13, 579 S.E.2d at 331. We believe Hinojos's bond was forfeited and the trial court properly entered judgment on the bond. However, because the trial court failed to address, at a minimum, the three factors set forth in *Polk*, we find it abused its discretion in ordering the estreatment of Hinojos's bond in the amount of $66,666.66. Accordingly, we reverse the trial court's estreatment amount determination and remand to the trial court to consider the *Polk* factors in its reconsideration of the estreatment amount.

## CONCLUSION

We affirm the trial court's estreatment of Hinojos's bond. We reverse the trial court's estreatment amount determination and remand to the trial court to consider the *Polk* factors in its reconsideration of the estreatment amount.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

WILLIAMS and GEATHERS, JJ., concur.